UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA COLBERT and LORI BROWN, Individually and on Behalf of All Other Persons Similarly Situated, <br><br> Plaintiffs, <br> vs. <br><br> HAND IN HAND GROUP INC. D/B/A CARING MATTERS HOME CARE; RUSSLIN ENTERPRISES LLC D/B/A CARING MATTERS HOME CARE; RUSSELL E. PIPER; and JOHN DOES #1-10, <br><br> Defendant. | Civil Action No. 2:22-cv-03055-JP <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs PATRICIA COLBERT ("Colbert") and LORI BROWN ("Brown") (together "Plaintiffs"), on behalf of themselves individually and as class representatives of other employees similarly situated, by and through their attorneys, complain and allege for their First Amended Complaint against Defendants HAND IN HAND GROUP INC. D/B/A CARING MATTERS HOME CARE; RUSSLIN ENTERPRISES LLC D/B/A CARING MATTERS HOME CARE; RUSSELL PIPER; and JOHN DOES #1-10 (together "Defendant" or "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiffs were home health aides who worked for Defendants for more than 40 hours per week ("overtime hours") and, along with numerous other similar home health aides, were paid straight time for their overtime hours and were not paid time and one half for their overtime hours.

2.	Plaintiffs allege on behalf of themselves and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

3.	Plaintiffs further complain on behalf of themselves, and a class of other similarly situated current and former employees of the Defendants, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendant for (a) hours worked for which they did not receive wages, and (b) overtime work performed for which they received straight pay and did not receive time and one half their regular wage rate.

## JURISDICTION AND VENUE

4.	This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.	Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

6.	This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

7.	Plaintiff PATRICIA COLBERT is a citizen of the Commonwealth of Pennsylvania residing at 107 Bradford Ave., Downingtown, Pennsylvania 19335.

8. Plaintiff LORI BROWN is a citizen of the Commonwealth of Pennsylvania residing at 360 Strasburg Ave., Parkesburg, Pennsylvania 19365.

9. Upon information and belief, Defendant HAND IN HAND GROUP INC. D/B/A CARING MATTERS HOME CARE ("Hand in Hand") is a Pennsylvania business entity with its principal place of business at 1000 Germantown Pike, Plymouth Meeting, Pennsylvania 19462. Hand in Hand operates a home health aide business located in the Commonwealth of Pennsylvania.

10. Upon information and belief, Defendant RUSSLIN ENTERPRISES LLC D/B/A CARING MATTERS HOME CARE ("Russlin," and together with Hand in Hand, the "Corporate Defendants")) is a North Carolina business entity with its principal place of business at 3200 Fairhill Drive, Suite 104, Raleigh, North Carolina 27612. Russlin operates a number of home health aide businesses located throughout the Commonwealth of Pennsylvania. *See* https://www.caringmattershomecare.com/home-care-locations (last visited Sept. 21, 2022).

11. Defendant RUSSELL E. PIPER ("PIPER") is an adult individual residing at 2117 Blue Haven Court, Wake Forest, North Carolina 27587. Mr. Piper is an officer, director and/or managing agent of Russlin, who participated in the day-to-day operations of Russlin and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2. Upon information and believe, PIPER has at all relevant times had the title of Chief Executive Officer of Russlin. Upon information and belief, PIPER had authority over the management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' home health aide employees and other employees and his decisions directly affected

the nature and condition of the home health care employees' employment.

12. Upon information and belief, during the last 6 years, PIPER (1) had the power to hire and fire the home health aide employees of the Corporate Defendants, (2) supervised and controlled the home health aide employees' schedules and conditions of employment, (3) determined the rate and method of payment of the home health aide employees, and (4) maintained employment records related to the home health aide employees.

13. Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of the Corporate Defendants, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2 and are jointly and severally liable with the Corporate Defendants.

14. Upon information and belief, Defendants ignore the corporate formalities of the above entities, co-mingle their funds, and act for all intents and purposes vis-à-vis their employment policies and practices as if they were the same or interchangeable entities.

## COLLECTIVE ACTION ALLEGATIONS

15. Pursuant to 29 U.S.C. §207, Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendants at any time since August 3, 2019 or a prior date resulting from the tolling of the statute of limitations, to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid overtime compensation at rates not less than one and one-half times the regular rate of pay for hours

worked in excess of forty hours per workweek (the "Collective Action Members").

16. Defendants did not post a notice indicating Plaintiffs had a right to be paid for hours worked over 40 in a week ("overtime") at time and one half. Accordingly, the statute of limitations applicable to claims for minimum wages and overtime should be tolled.

17. This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

18. Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

19. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

20. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has

acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are

   a. whether the Defendants employed the Collective Action members within the meaning of the FLSA;

   b. whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

   c. what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

   d. whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;

   e. whether Defendants failed to pay the Collective Action Members overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

   f. whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

   g. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

   h. whether Defendants should be enjoined from such violations of the FLSA in the future.

21.   Plaintiffs know of no difficulty that will be encountered in the management of this

litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

22.     Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

23.     Plaintiffs brings their Pennsylvania Minimum Wage Act ("PaMWA"), 43 P.S. § 333.101, *et seq.* claims on behalf of all persons who were employed by Defendant at any time since August 3, 2019 or later date resulting from tolling of the statute of limitations, to the entry of judgment in this case (the "Class Period"), who were not paid all their overtime wages (the "Class").

24.     The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there at least 40 members of Class during the Class Period.

25.     The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

26.     The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

27. Plaintiffs are committed to pursuing their action and have retained competent counsel experienced in employment law and class action litigation.

28. Plaintiffs have the same interests in this matter as all other members of the class and Plaintiff's claims are typical of the Class.

29. There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

   a. whether the Defendants employed the members of the Class within the meaning of the PaMWA;

   b. whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and members of the Class;

   c. what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

   d. whether Defendant failed and/or refused to pay the members of the Class a premium pay for hours worked in excess of forty hours per workweek under the PaMWA;

   e. whether the Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, interest, costs and disbursements and attorneys' fees; and

   f. whether the Defendant should be enjoined from such violations of the PaMWA in the future/

### PATRICIA COLBERT'S ALLEGATIONS

30. Ms. Colbert was a home health aide employed by Defendants from about 2016 until approximately January 2022 (the "time period").

31. Defendants are an employment agency operating under the name Caring Matters

Home Care that sent Ms. Colbert to work as a home health aide for numerous customers located in the Commonwealth of Pennsylvania.

32. During the time period, Ms. Colbert maintained her own residence, and did not reside in the homes of Defendants' clients or in the home of her employer, as her primary residence.

33. While employed by Defendants, Ms. Colbert generally worked more than 40 hours per week and was not paid time and one half for her hours worked over 40 in a work week.

34. Ms. Colbert regularly worked seven (7) 12-hour shifts per week for Defendants during her employment.

35. Attached as <u>Exhibit A</u> are certain paystubs of Ms. Colbert which show that she was illegally not paid time and one half her regular wages for her hours over 40 in a week ("overtime").

36. Ms. Colbert was generally not permitted to leave the client's residence during her shift.

37. Ms. Colbert was often forced to combine her meal times with the meal times of the Defendants' clients because they needed feeding assistance and/or constant supervision.

38. Ms. Colbert was not paid full time and one half her regular rate for her overtime hours.

39. Defendants never provided or offered to Ms. Colbert any health insurance, free of charge.

40. Medicaid paid Defendants for some or all of Ms. Colbert's services and the services of the other similar home health aide employees.

41. Ms. Colbert's co-workers performed the same and/or similar work to that of Ms. Colbert and were paid in a similar manner and subject to the same rules and policies ("similar health aides").

42. The similar health aides did not "live in" the homes of Defendants' clients as their primary residences.

43. The similar health aides generally worked more than 40 hours per week, but were not paid overtime for hours worked in excess of 40 hours per week.

44. The similar health aides were generally not permitted to leave the client's residence during their shift.

45. At all relevant times, Defendants have maintained a practice and policy of assigning Ms. Colbert and similar health aides to work more than 40 hours per week without paying them one and one half times the basic minimum hourly rate for all hours worked in excess of forty per week.

46. Defendants' actions as described herein were intentional and not made in good faith.

47. When Ms. Colbert complained to Defendants that she was not getting paid overtime for hours worked in excess of 40, Defendants responded that the Company does not pay overtime.

48. During the time period, Ms. Colbert was not paid overtime wages for all of her hours worked over forty in a workweek ("overtime").

49. Ms. Colbert also generally signed in and out using the client's land line phone. When Ms. Colbert clocked out, she generally entered codes showing the types of work that she

had performed. At times, Ms. Colbert filed handwritten time sheets.

50. Defendants never posted a notice in a conspicuous location that Ms. Colbert and similar health aide employees had a right to minimum wages and/or overtime wages.

51. Ms. Colbert and several other persons hired by Defendants were at times paid by Defendants as if they were 1099 contractors rather than W-2 employees, however, that classification by Defendants is not dispositive of the true nature of their employment. Instead, Ms. Colbert and the other 1099 workers were and are in fact employees under the applicable law and eligible for overtime under both the FLSA and PaMWA.

## LISA BROWN'S ALLEGATIONS

52. Ms. Brown was a home health aide employed by Defendants from approximately March 2022 through May 2022 (the "time period").

53. Defendants are an employment agency operating under the name Caring Matters Home Care that sent Ms. Brown to work as a home health aide for a customer located in the Commonwealth of Pennsylvania.

54. During the time period, Ms. Brown maintained her own residence, and did not reside in the homes of Defendants' clients or in the home of her employer, as her primary residence.

55. While employed by Defendants, Ms. Brown generally worked more than 40 hours per week and was not paid time and one half for her hours worked over 40 in a work week.

56. Ms. Brown regularly worked seven (7) 12-hour shifts per week for Defendants during her employment.

57. Attached as Exhibit B are certain paystubs of Ms. Brown which show that she

was illegally not paid time and one half her regular wages for her hours over 40 in a week ("overtime").

58. Ms. Brown was generally not permitted to leave the client's residence during her shift.

59. Ms. Brown was often forced to combine her meal times with the meal times of the Defendants' clients because they needed feeding assistance and/or constant supervision.

60. Ms. Brown was not paid full time and one half her regular rate for her overtime hours.

61. Defendants never provided or offered to Ms. Brown any health insurance, free of charge.

62. Medicaid paid Defendants for some or all of Ms. Brown's services and the services of the other similar home health aide employees.

63. Ms. Brown's co-workers performed the same and/or similar work to that of Ms. Colbert and were paid in a similar manner and subject to the same rules and policies ("similar health aides").

64. The similar health aides did not "live in" the homes of Defendants' clients as their primary residences.

65. The similar health aides generally worked more than 40 hours per week, but were not paid overtime for hours worked in excess of 40 hours per week.

66. The similar health aides were generally not permitted to leave the client's residence during their shift.

67. At all relevant times, Defendants have maintained a practice and policy of

assigning Ms. Colbert and similar health aides to work more than 40 hours per week without paying them one and one half times the basic minimum hourly rate for all hours worked in excess of forty per week.

68. Defendants' actions as described herein were intentional and not made in good faith.

69. When Ms. Brown complained to Defendants that she was not getting paid overtime for hours worked in excess of 40, Defendants responded that the Company does not pay overtime.

70. During the time period, Ms. Brown was not paid overtime wages for all of her hours worked over forty in a workweek ("overtime").

71. Ms. Brown filed handwritten time sheets showing that she worked in excess of 40 hours per work.

72. Defendants never posted a notice in a conspicuous location that Ms. Brown and similar health aide employees had a right to minimum wages and/or overtime wages.

73. Ms. Brown and several other persons hired by Defendants were at times paid by Defendants as if they were 1099 contractors rather than W-2 employees, however, that classification by Defendants is not dispositive of the true nature of their employment. Instead, Ms. Brown and the other 1099 workers were and are in fact employees under the applicable law and eligible for overtime under both the FLSA and PaMWA.

## CLAIM I
## FAIR LABOR STANDARDS ACT

74. Plaintiffs repeat and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

75. At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

76. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

77. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

78. Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. §216(b). The named Plaintiffs' written consent is attached hereto as <u>Exhibit C</u> and incorporated by reference.

79. At all relevant times, the Defendants had a policy and practice of refusing to pay its employees overtime wages equal to time and one half their employees' regular wages for hours worked over forty in a work week.

80. As a result of the Defendants' willful failure to compensate its employees, including Plaintiffs and the Collective Action members overtime wages for all of their hours worked the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

81. As a result of the Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 211(c) and 215(a).

82. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

83. Due to the Defendants' FLSA violations, Plaintiffs and the Collective Action Class are entitled to recover from the Defendants, their unpaid overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## CLAIM II
## PENNSYLVANIA LABOR LAW

84. Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

85. At all relevant times, Plaintiffs and the members of the Class were employed by the Defendants.

86. Defendants willfully violated Plaintiff's rights, and the rights of the members of the Class, by failing to pay them wages in violation of the Pennsylvania Labor Law and its regulations. See the Pennsylvania Minimum Wage Act ("PaMWA") 43 P.S. §§ 333.101, et seq., and Pennsylvania Wage Payment and Collection Act, 43 P.S. §§ 260.1-260.45.

87. The Pennsylvania Minimum Wage Act ("PaMWA") requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. 43 P.S. §333.104(c).

88. Pennsylvania Wage Payment and Collection Act requires the payment of regular wages for work performed. 43 P.S. § 260.3.

89. The Defendants' Pennsylvania Labor Law violations have caused Plaintiffs and

the members of the Class, irreparable harm for which there is no adequate remedy at law.

90.     Due to the Defendants' Pennsylvania Labor Law violations, Plaintiffs and the members of the Class are entitled to recover from Defendants their unpaid wages, unpaid minimum wages, unpaid overtime wages, reasonable attorneys' fees, and/or costs and disbursements of the action, pursuant to 43 P.S. § 333.113 and 43 P.S. § 260.9a.

## CLAIM III
### (UNJUST ENRICHMENT, DEFENDANTS' FAILURE TO PAY ALL WAGES DUE)

91.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

92.     Under the common law doctrine of "unjust enrichment" insofar as Defendants, by their policies and actions, benefited from, and increased their profits and personal compensation by failing to pay Plaintiffs and the Class all wages due for work performed,

93.     Defendants accepted and received the benefits of the work performed by Plaintiffs and the Class at the expense of Plaintiffs and the Class. It is inequitable and unjust for Defendants to reap the benefits of Plaintiffs' and the Class's labor, without paying all wages due for hours caring for the clients of Defendants.

94.     Plaintiffs and the Class are entitled to relief for this unjust enrichment in an amount equal to the benefits unjustly retained by Defendants, plus interest on these amounts.

## CLAIM IV
### (BREACH OF CONTRACT-WAGES)

95.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

96.     Plaintiffs and the members of the class entered into contracts with the Defendants

under which Plaintiffs and the members of the Class were to provide home health aide services and Defendants were required to pay wages as required by law.

97. Plaintiffs and the members of the Class fulfilled their obligations under the contracts, but Defendants failed to pay the wages as required by the contracts.

98. As a result of Defendants' breach, Plaintiffs and the members of the Class are entitled to recover damages, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and members of the Class, respectfully request that this Court grant the following relief:

a. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiffs and their counsel to represent the Class;

b. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiffs and their counsel to represent the Collective Action members;

c. Judgment in an amount to be determined at trial, plus interest;

d. A declaratory judgment that the practices complained of herein are unlawful

under the FLSA, the Pennsylvania Minimum Wage Act and Pennsylvania Wage Payment and Collection Act,

e. An order tolling the statute of limitations;

f. An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

g. An award of unpaid wages, spread of hours wages, overtime wages and minimum wages due under the FLSA and the Pennsylvania State law.

h. An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay wages, minimum wages, and/or overtime wages pursuant to 29 U.S.C. § 216 and the Pennsylvania State law.

i. An award of prejudgment and postjudgment interest;

j. An award of costs and expenses of this action together with reasonable attorney's and expert fees;

k. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: September 26, 2022

/s/ Sergei Lemberg
Sergei Lemberg
LEMBERG LAW, LLC

43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424

AND

LAW OFFICE OF WILLIAM COUDERT RAND
William Coudert Rand, Esq.
*Attorney for Plaintiff*, Individually and on
Behalf of All Persons Similarly Situated
501 Fifth Avenue 15th Floor
New York, New York 10017
Tel: (212) 286-1425
Fax: (646) 688-3078
Email: wcrand@wcrand.com
(To Be Admitted Pro Hac Vice)